UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| WILLIAM ANTHONY, *et al.*, | ) |
| | ) Case No. 3:22-cv-416 |
| *Plaintiffs*, | ) |
| | ) Judge Atchley |
| v. | ) |
| | ) Magistrate Judge McCook |
| BARRY VAN OVER, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motions to Compel Arbitration [Docs. 122, 125 & 126] filed by Defendants Premier Franchising Group, LLC ("PMA"), Myles Baker ("Baker"), Barry Van Over ("Van Over"), Brent Seebohm ("Seebohm"), and Franchise Fastlane, LLC ("FFL") (collectively the "PMA Defendants"). Plaintiffs filed Responses in Opposition. [Docs. 128, 129 & 130]. The PMA Defendants replied [Docs. 140, 141, 143, 144 & 145] in support of their Motions to Compel. Plaintiffs filed a Supplemental Brief pursuant to Local Rule 7.1(d) [Doc. 154] to which the PMA Defendants filed Responses. [Docs. 155, 157 & 158].

In summary, the PMA Defendants claim that Plaintiffs have agreed in writing to arbitrate the claims set forth in the Amended Complaint [Doc. 60], and further, that according to the agreed terms, the question of arbitrability of these claims must be submitted to the arbitrator. Plaintiffs disagree, arguing that their claims are not subject to mandatory arbitration for a myriad of reasons. As explained below, the Court finds that an arbitration agreement exists between Plaintiffs and PMA pursuant to their duly executed Franchise Agreements. Further, there is clear and unmistakable evidence the parties agreed to delegate questions of arbitrability to the arbitrator. Accordingly, the PMA Defendants' Motions will be **GRANTED**, and all the remaining claims in

this action, including the arbitrability of those claims are to be submitted to an appropriate arbitrator according to the written agreements between the parties. Further, the Court takes this opportunity to resolve related outstanding procedural motions on the docket.[1]

I. FACTUAL BACKGROUND

The facts show that Plaintiffs in this matter are 54 franchisees that entered into various franchise agreements with Defendant PMA to open and operate martial arts studios. The PMA Defendants are comprised of the franchisor of the Premier Martial Arts system (PMA), current and former officers of PMA (Van Over and Baker), and others alleged to have been involved in the sale of PMA franchises (Seebohm and FFL).[2] The original Complaint [Doc. 1] was filed on November 18, 2022. An Amended Complaint [Doc. 60] filed on December 16, 2022, named extra franchisee Plaintiffs alongside adding Defendant Kimberley Daly.

The current Complaint alleges 15 claims against Defendants including: RICO violations (Counts I and II), Fraudulent Inducement (Count III), Breach of Contract (Counts IV and V), Declaratory Judgement Act relief (Counts VI and VII), various Tennessee state law violations (Counts VIII and XV), Negligence Per Se (Count IX), Negligent Misrepresentation (Count X), Fraud (Counts XI and XII), Civil Conspiracy (Count XIII), and Quantum Meruit/Unjust Enrichment (Count XIV). [Doc. 60]. While greatly varied in name, a review of the Complaint reveals a similar set of allegations underlying the claims. Ultimately, Plaintiffs allege that they

---

[1] There are a few outstanding issues for the Court to resolve. First, the Motions for Extension of Time to File [Docs. 131, 133 & 134] will be granted as unopposed pursuant to Plaintiffs' Response. [Doc. 132]. Second, the Court finds Plaintiff Bonnie Fraser's claims are subject to this Order pursuant to the unopposed Motions filed by Defendants PMA, Baker, and Van Over. [Docs. 159 & 163]. Third, this Order does not apply to Plaintiffs Key Ingredients, Inc., Allison Key, and Jason Key's ("the Key Plaintiffs") claims against Defendants Van Over, Baker, and PMA, as those claims have been settled. [Doc. 156]. Accordingly, the Court will dismiss the relevant claims with prejudice. Fourth, as there are no remaining claims before the Court and this matter is stayed pending the resolution of arbitration, the Motions for Permanent Injunction [Docs. 164, 166 & 167] will be denied as moot with leave to refile should the need arise.
[2] Defendants Kimberley Daly and Unleashed Brands, LLC were dismissed pursuant to the Court's concurrently docketed Order on their respective Motions to Dismiss.

were fraudulently misled on a variety of statistics relating to profitability and time required to successfully manage and operate PMA franchises.

The PMA Defendants filed Motions to Compel Arbitration [Docs. 122, 125 & 126], asserting that pursuant to arbitration agreements included in every Franchise Agreement signed by Plaintiffs, the instant claims are not properly before this Court and must be resolved by an arbitrator. Central to Defendants' position is the assertion that the arbitration agreements include provisions delegating the question of arbitrability to the arbitrator. As such, Defendants argue that the parties must be compelled to arbitration without the Court addressing the merits of challenges to arbitrability. Plaintiffs disagree, providing various lines of argument across their response briefs. [Docs. 128, 129 & 130].[3] Defendants replied [Docs. 140, 141, 143 & 145], detailing their legal reasoning to counter Plaintiffs' arguments while reiterating their central claim – that the instant Motions are simple, hinging on the Court's resolution of two questions. Namely, does an agreement to arbitrate exist, and if so, is there clear and unmistakable evidence that the parties intended to delegate issues of arbitrability to the arbitrator. [Doc. 143 at 1]. They assert a finding of "yes" to both questions is dispositive of this matter. Plaintiffs filed a Local Rule 7.1(d) Supplemental Brief [Doc. 154] on April 7, 2023, and Defendants filed Reponses [Docs. 155, 157 & 158] shortly thereafter.[4]

An examination of the Franchise Agreements entered into by Plaintiffs reveals that they all include arbitration agreements. [*See generally* all Exhibit Franchise Agreements as attached to

---

[3] Given the volume of briefing and wide-ranging arguments on this issue, the Court has briefly summarized Plaintiffs' arguments here. 1) Plaintiffs argue that claims from franchisees who entered Area Development Agreements ("ADAs") are not subject to the arbitration agreements in the Franchise Agreements. [Doc. 128]. 2) Plaintiffs argue that the arbitration agreements do not delegate the question of arbitrability to the arbitrator. [Doc. 128]. 3) The language used in the arbitration agreements cannot be construed to compel claims against non-signatory defendants to arbitration. [Docs. 129 & 130].

[4] Upon review, the Court finds the contents of Plaintiffs' Supplemental Brief to be immaterial to the resolution of the instant Motions to Compel and declines to consider the briefing further.

Doc. 122]. All but two[5] of the Franchise agreements contain the following language:

> "all disputes between you and we, including allegations of fraud, misrepresentation and violation of any state or federal laws, rules or regulations, arising under, as a result of, or in connection with this Agreement, the PMA Studio or the Franchisee's Studio are subject to and will be resolved exclusively by arbitration conducted according to the then current commercial arbitration rules of the American Arbitration Association."[6]

The two 2022 Franchise Agreements contain the following relevant language related to arbitration:

> "To the fullest extent permitted by law, any dispute between (A) you and/or any Owner and (B) Franchisor or any Franchisor Indemnitee arising out of or relating in any way to
> (a) any claim, except for claims to the extent that they relate to [intellectual property],
> (b) this Agreement or any other agreement between you and/or any Owner and Franchisor or any Franchisor Indemnitee,
> (c) the offer and sale of the franchise opportunity,
> (d) any representations made prior to the execution of this Agreement,
> (e) the validity, enforceability, or scope of this Agreement, <u>or</u>
> (f) the relationship of the parties
> must be submitted to binding arbitration before the American Arbitration Association ("AAA") pursuant to its Commercial Arbitration Rules in effect at the time the arbitration demand is filed…"[7]

Having reviewed all the briefing and documentation surrounding the instant Motions, the Court is prepared to rule.

## II. LAW

The Federal Arbitration Act ("FAA") enables contracting parties to agree to settle certain contractual disputes with an arbitrator rather than a court. See 9 U.S.C. § 2. The FAA provides in pertinent part:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement

---

[5] The Franchise Agreements entered into by Franchisees Nora LLC d/b/a Premier Martial Arts and Eighty One Thirteen L.L.C. [Docs. 122-40 & 122-55], referred to as the "2022 Franchise Agreements" in the briefings, contain a differently worded arbitration agreement.
[6] This language is found in §21.1 of the Franchise Agreements signed by the majority of Plaintiffs.
[7] This language is found in §23.G(1) of the 2022 Franchise Agreements.

4
Case 3:22-cv-00416-CEA-JEM   Document 176   Filed 09/27/23   Page 4 of 14   PageID #: 8265

> in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The principal purpose of the FAA, as the Supreme Court recently emphasized in *Morgan*, is to ensure that private arbitration agreements are enforced according to their terms, just as with any other contract. *Morgan v. Sundance*, 142 S.Ct. 1708 (2022) (noting that the FAA's policy "is about treating arbitration contracts like all others").

In the absence of a delegation clause, a court asked to compel arbitration under the FAA has four tasks: (1) determine whether the parties agreed to arbitrate; (2) determine the scope of the arbitration agreement; (3) if federal statutory claims are asserted, determine whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all claims are subject to arbitration, determine whether to dismiss or stay the remaining proceedings. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Compuserve, Inc. v. Vigny Int'l Fin., Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)).

Consistent with the principle that "[a]rbitration is simply a matter of contract between the parties," the Supreme Court has made clear that parties may "agree to submit the arbitrability question itself to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *accord Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) (the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes"). "After all, such an agreement is 'simply an additional, antecedent agreement' about who should decide these questions." *Blanton v. Domino's Pizza Franchising, LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (quoting *Rent-A-Center*

*W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010)).

Deciding whether parties have agreed to submit issues of arbitrability to arbitration is "fairly simple." *First Options*, 514 U.S. at 943. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agree to arbitrate that dispute," the question of who (the arbitrator or the court) decides the validity, scope, or enforceability of an arbitration agreement "turns upon what the parties agreed about *that* matter." *Id*. (emphasis in original). If there is "clear and unmistakable evidence" that the parties intended the issue of arbitrability to be decided by an arbitrator, "a court may not decide arbitrability questions." *Henry Schein*, 139 S. Ct. at 530. "That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id*. at 529. In the Sixth Circuit, "the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Blanton*, 962 F.3d at 845-46.

### III. ANALYSIS

Despite substantial motion practice by the parties on the issue of compelled arbitration, the resolution of the Court's inquiry and analysis here is rather simple. First, the Court must determine if an agreement to arbitrate exists. If not, the parties cannot be forced to arbitrate the dispute. Second, if an agreement to arbitrate exists, the Court must determine if there is "clear and unmistakable" evidence that the parties intended to delegate any questions of arbitrability to the arbitrator. If so, the Court must compel arbitration of all claims without addressing the merits of Plaintiffs' challenges to arbitrability.[8] If there is not clear and unmistakable evidence the parties

---

[8] The exception here being a specific challenge to the enforceability of the delegation provision. *See Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022) (stating that "a party must 'show that the basis of their challenge is…directed specifically to the delegation provision.'"). However, this challenge is difficult to satisfy – "[a] party fails to make this showing if its challenge to a delegation clause 'simply recycle[s] the same arguments that pertain to the enforceability of the agreement…'" *Becker*, 962 F.3d at 356.

intended to delegate the question of arbitrability to an arbitrator, then the Court must adjudicate the Plaintiffs' challenges to the arbitrability of the individual claims. *Jacobs Field Servs. N. Am. v. Wacker Polysilicon N. Am.*, 375 F. Supp. 3d 898, 912 (E.D. Tenn. 2021).

For the reasons explained below, the Court finds that an agreement to arbitrate does exist and was entered into by Plaintiffs. Additionally, the Court finds there is clear and unmistakable evidence that the parties delegated the question of arbitrability to an arbitrator. Further, the Court finds that Plaintiffs' challenge to the enforceability of the delegation provision falls short of the required legal standard. Accordingly, Plaintiffs' substantive challenges to the arbitrability of claims, including challenges to which Defendants may compel arbitration are not properly before this Court, and the arbitrator must resolve all questions regarding the scope of the arbitration agreements.

**Does An Arbitration Agreement Exist?**

The first question before the Court has a simple resolution. Is there an arbitration agreement between the Parties?[9] That answer is indisputably "yes." Both versions of the Franchise Agreements entered into by Plaintiffs contain explicit arbitration agreements.[10] Plaintiffs acknowledge entering agreements with PMA in their Complaint, stating "PMA fraudulently induced Plaintiffs to sign documents [the Franchise Agreements] provided by PMA in order to become franchisees." [Doc. 60 at 177]. Further, Plaintiffs' Amended Complaint seeks a declaration that the included arbitration provisions "are unenforceable for a host of different reasons." [Doc. 60 at 177]. By a plain reading of the Franchise Agreements at the heart of this matter and the

---

[9] For the purposes of this question, the Court must simply determine whether Plaintiffs entered into arbitration agreements as part of their Franchise Agreements with PMA. The non-signatories do not claim to be parties to the Franchise Agreements.

[10] As to Plaintiffs who executed the majority Franchise Agreement, §21 titled "DISPUTES SUBJECT TO ARBITRATION" very clearly constitutes an arbitration agreement by a plain reading of the provision. As to the two Plaintiffs who executed the 2022 Franchise Agreement, §23G titled "Dispute Resolution by Binding Arbitration" similarly clearly constitutes an arbitration agreement by a plain reading of the provision.

Plaintiffs' own words in the Complaint, the Court finds that an arbitration agreement exists between the Parties.[11]

### Is There Clear And Unmistakable Evidence Of A Delegation Of Arbitrability?

Having found that an arbitration agreement exists, the Court turns to the second question – is there "clear and unmistakable" evidence of a delegation of arbitrability?

While a district court generally must make a threshold determination about the arbitrability of a claim before requiring the parties to arbitrate,[12] under the FAA, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein*, 139 S. Ct. at 529 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-9 (2010)). In such instances of delegation, the court is powerless to even consider arguments about applicability of the arbitration agreement to disputed claims. *Id*. at 529. "[I]f an agreement to arbitrate does exist between the parties, [and if] there is clear and unmistakable evidence they intended to delegate issues of arbitrability to the arbitrator…the Court must compel arbitration without addressing the merits of Plaintiffs' challenges to arbitrability." *Jacobs Field Servs.*, 375 F. Supp. 3d at 913.

Whether "clear and unmistakable" evidence of a delegation provision exists is a question

---

[11] In their reply briefing, Plaintiffs assert a wide-ranging variety of attacks on the validity of agreements between the parties. However, the Court need only consider the existence of an agreement given the delegation provision. The law is well settled against Plaintiffs on this point. "In the arbitration context, contract validity and contract formation are distinct issues." *Sanders v. Allenbrooke Nursing and Rehabilitation Ctr.*, 2020 WL 5576696, at *5 (W.D. Tenn. Sept. 17, 2020) "The issue of the agreement's 'validity' is different from the issue of whether any agreement between the parties was ever concluded." *Rent-A-Center*, 561 U.S. at 88 n.2. "Validity is about whether an agreement that was made 'is legally binding'…[f]ormation is about whether an agreement was 'in fact agreed to' or 'was ever concluded.'" *In re Auto. Parts Antitrust Litig.*, 951 F.3d 377, 385 (6th Cir. 2020).

[12] *See Jacobs*, 375 F. Supp 3d at 912 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)) ("As a general rule, a district court must make a threshold determination regarding the arbitrability of a claim – in other words, that a contract contains a legally valid arbitration clause that encompasses the underlying claim – before the court requires the parties to arbitrate.").

of federal law in the Sixth Circuit. *Blanton v. Domino's Pizza Franchising, LLC*, 962 F.3d 842, 846-47 (6th Cir. 2020). Further, "the incorporation of the AAA rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Blanton*, at 845-46.

Here, both versions of the Franchise Agreement have legally sufficient delegation provisions. The majority Franchise Agreements provide in §21.1 that all disputes arising out of or relating to the parties' franchising agreements[13] "will be resolved exclusively by arbitration conducted according to the then current commercial arbitration rules of the American Arbitration Association." *See* the majority Franchise Agreements at §21.1. Rule 7(a) of the current AAA Commercial Rules provides "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." *See* American Arbitration Association Commercial Rule 7(a). The 2022 Franchise Agreements contain similar language in §23G.1 outlining that any dispute "arising out of or relating in any way to…(e) the validity, enforceability, or scope of this Agreement…must be submitted to binding arbitration before the American Arbitration Association ('AAA') pursuant to its Commercial Arbitration Rules in effect at the time the arbitration demand is filed." *See* the 2022 Franchise Agreements at §23G.1. Accordingly, the Court finds that the arbitration agreements present in both versions of the Franchise Agreement expressly delegate all questions regarding the scope, validity, or enforceability of arbitration to the arbitrator.

The above finding unquestionably applies to all arbitration disputes as to signatories to the

---

[13] The Court notes that both versions of the Franchise Agreements in question specifically exempt disputes relating to PMA's intellectual property rights from arbitration. This is an immaterial distinction here, as none of the claims relate to PMA's intellectual property rights.

9
Case 3:22-cv-00416-CEA-JEM   Document 176   Filed 09/27/23   Page 9 of 14   PageID #: 8270

Franchise Agreements. However, Plaintiffs preemptively argued that non-signatories to the Franchise Agreements were ineligible to compel claims to arbitration.[14] Unfortunately for Plaintiffs, this distinction has no legal salience to the Motions at hand. In *Blanton*, the Sixth Circuit held that Domino's (a non-signatory to the agreement in question there) ability to enforce the arbitration agreement involved a question of arbitrability, and as such, under the AAA's Rules had to be resolved by an arbitrator. *Blanton*, 962 F.3d at 848. The Sixth Circuit has since confirmed this holding twice stating "[w]hether a non-signatory can enforce [an] arbitration agreement is a question of the enforceability of the arbitration clause, as to that defendant." *See Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021) and *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022). Accordingly, the delegation provisions apply to all claims present against all the PMA Defendants, and the enforceability as to each specific Defendant is a question for the arbitrator.

### Is There A Sufficient Specific Challenge To A Delegation Provision?

In the Sixth Circuit, the last resort for a party in Plaintiffs' shoes is a specific challenge to the delegation provision. A successful challenge would require this Court to resolve the questions of arbitrability rather than leaving them for the arbitrator to decide. Perhaps anticipating this outcome, Plaintiffs acknowledge that recent case law in this Circuit outlines what they must do to challenge the delegation clause here. [Doc. 128 at 17]. Under *Becker*, a party wishing to challenge a delegation provision must do so "specifically." *Becker*, 39 F.4th at 356. This is a difficult task – Plaintiffs must "show that *the basis of their challenge* is directed specifically to the delegation provision" and rests "in part, on different factual or legal grounds than the ones supporting its challenge to the arbitration agreement as a whole." *Id*. (emphasis in original). Further, "[a] party

---

[14] There is no dispute that Plaintiffs entered into the Franchise Agreements with Defendant PMA. From the briefing, it seems there is no dispute that Defendants FFL and Seebohm are non-signatories to the Franchise Agreements, while the designation of signatory/non-signatory status with respect to Defendants Van Over and Baker is contested.

fails to make this showing if its challenge to a delegation clause simply recycle[s] the same arguments that pertain to the enforceability of the agreement as a whole." *Id*.

Plaintiffs go to great lengths to convince this Court that their "specific" challenge to the delegation provision meets the *Becker* standard. The Court is not persuaded. Reviewing Plaintiffs' arguments, their arguments against the enforceability of both the *arbitration agreement* and the *delegation provision* are woven with a common thread.

Plaintiffs' Amended Complaint argues against the enforceability of the arbitration agreement, alleging that the relevant provisions "purport to limit the damages and claims available against PMA, and enforcing these provisions would undermine the [federal] rights protected by and the purposes of [RICO]." [Doc. 60 at 179]. Additionally, in their opposition brief, Plaintiffs allege the arbitration provisions are unenforceable because they "operate as a 'prospective waiver'" of Plaintiffs' right to pursue statutory remedies. [Doc. 128 at 23 and fn. 25]. Plaintiffs also claim the arbitration agreement is unenforceable as it "impermissibly undermines RICO's remedial purpose." [Doc. 128 at 22].

Similarly, Plaintiffs' "specific" challenge to the delegation provision argues that "the delegation provision [is] an unenforceable violation…as it acts as a prospective waiver of federal statutory rights." [Doc. 128 at 17]. As another piece of their challenge, they allege "the purported delegation clause requires the arbitrator to determine…whether the arbitration provision impermissibly waives Plaintiffs' federal substantive rights, including their right to pursue their RICO claims and recover treble damages." [Doc. 128 at 18].

Reading the challenges side by side, they are substantially the same. Both lines of argument assert the same concern about a "prospective waiver" of rights and an undermining of relief under RICO. Accordingly, the Court finds there is an absence of a "specific" challenge as required by

*Becker*. Therefore, the Court "must treat [the delegation provision] as valid…and must enforce it." *Becker*, 39 F.4th at 356.

### Summary Of Arbitration Related Issues

As explained above, the Court finds that an arbitration agreement exists between the Plaintiffs and Defendant PMA. Further, there is clear and unmistakable evidence of a delegation provision delegating the resolution of any questions of arbitrability surrounding the claims, including a determination of which parties may enforce the arbitration agreement, to the arbitrator. Finally, the Court finds that Plaintiffs did not meet their burden to "specifically" challenge the delegation provision as set out in *Becker*. Accordingly, the Court has no discretion in this matter – it must enforce the delegation provision.

### Stay Or Dismiss The Case?

"[W]hether to stay or dismiss a case in which all claims have been referred to arbitration is a matter of discretion." *5th of July, LLC v. Thomas*, 2020 WL 5983111, at *5 (M.D. Tenn. Oct. 8, 2020). Under the FAA, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement" if it is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3. Pursuant to the Defendants' Motions [Docs. 122, 125 & 126] and the Court's conclusion that the parties have delegated arbitrability questions to the arbitrator, a stay is more appropriate at this time – should Plaintiffs succeed in their challenges to arbitration before the arbitrator, the impacted claims will return to this Court. Should the arbitrator determine all claims are arbitrable, dismissal of this matter would then be appropriate.

### IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

- The Motions for Extension of Time to File [Docs. 131, 133 & 134] are granted as unopposed pursuant to Plaintiffs' Response. [Doc. 132].

- The unopposed Motions to Include Claims of Plaintiff Bonnie Fraser [Docs. 159 & 163] are **GRANTED**.

- The Key Plaintiffs' unopposed Motion for Entry of Order of Dismissal [Doc. 156] is **GRANTED.**

  - The Key Plaintiffs have resolved their claims against Defendants Van Over, Baker, and PMA. Accordingly, the Key Plaintiffs claims against those Defendants are **DISMISSED WITH PREJUDICE**.

- The Motions to Compel Arbitration [Docs. 122, 125 & 126] are **GRANTED**. All remaining claims, including questions of arbitrability, are **ORDERED** to arbitration in accordance with this Order and the arbitration agreements included in the Franchise Agreements signed by the Plaintiffs.

  - The Court **STAYS** this action pending the conclusion of arbitration. Within fourteen (14) days of the conclusion of arbitration, the parties **SHALL NOTIFY** the Court of the outcome of the proceedings. Additionally, to ensure that arbitration begins promptly, the Court **ORDERS** the parties to file a status report within six (6) months of the entry of this Order and at three-month (3-month) intervals thereafter until the arbitration proceedings conclude.

- Given that no claims remain before the Court at this time, the Motions for Permanent Injunction [Docs. 164, 166 & 167] are **DENIED AS MOOT** with leave to refile should the need arise.

- Finally, the Court **DIRECTS** the Clerk to administratively close this case to be re-opened should the arbitrator return any non-arbitrable claims to this Court.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**